IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MICHAEL CAMACHO,<br><br>Plaintiff,<br><br>vs.<br><br>ASSOCIATION OF APARTMENT<br>OWNERS OF KE NANI KAI, *et al.*,<br><br>Defendants. | Civil No. 24-00372 MWJS-RT<br><br>ORDER GRANTING DEFENDANTS<br>ASSOCIATION OF APARTMENT<br>OWNERS OF KE NANI KAI AND<br>CERTIFIED MANAGEMENT INC.'S<br>MOTION FOR JUDGMENT ON THE<br>PLEADINGS |

**INTRODUCTION**

Plaintiff Michael Camacho moved to a condominium at Ke Nani Kai on Molokaʻi

seeking a restful and restorative environment for his health.  In this lawsuit, he alleges

that his experience there was anything but that.  He contends that over the course of his

time at Ke Nani Kai, he became involved in a long-running dispute over his wife's

service animal, in which management refused to provide a reasonable accommodation,

harassed Camacho and his wife, and retaliated against them.  And he concludes that

through these actions, Defendants Association of Apartment Owners of Ke Nani Kai

(the AOAO) and Certified Management Inc., d/b/a Associa Hawaii (Associa) violated

both state and federal antidiscrimination laws and Hawaiʻi criminal law.

Defendants have now moved for judgment on the pleadings.  Among other

things, they argue that the civil claims in the Second Amended Complaint are time-

barred on their face, and that Camacho lacks the authority to enforce the state criminal

code.  For the reasons below, the court agrees and GRANTS Defendants' motion for

judgment on the pleadings.  Because Camacho cannot assert the criminal claims set

forth in the complaint as a matter of law, those claims are dismissed with prejudice.  But

because Camacho might allege facts through further amendment which could support

the application of tolling to his civil claims, the court GRANTS him partial leave to

amend.  The court lays out the particulars of which claims survive and which may be

amended at the end of this order.

## **BACKGROUND**

The Second Amended Complaint makes the following factual allegations, which

the court assumes are true at this stage in the proceedings.  *See Machado v. Int'l Ass'n of

Heat & Frost Insulators & Asbestos Workers*, 454 F. Supp. 2d 1056, 1061 (D. Haw. 2006).

Camacho moved into a condo at Ke Nani Kai in 2018, in part based on his

healthcare provider's recommendation that he "reside in a quiet secluded environment

to best benefit [his] health" and to accommodate his medical conditions.  Dkt. No. 82, at

PageID.943, 945.  Ke Nani Kai is a housing complex on the island of Moloka'i.

Although Camacho's wife, "a person of Austronesian descent," lived off-island, she

would visit him at Ke Nani Kai "for a few days at a time."  *Id.* at PageID.943.  Both

Camacho and his wife have disabilities that require certain accommodations, although

the Second Amended Complaint does not specify what these disabilities are.

In April 2019, Camacho contacted John Sears, then President of the AOAO, requesting that his wife be allowed to use a service dog at Ke Nani Kai.  Sears instructed Camacho to check the House Rules for specific requirements and to notify Stephen Stout, the condo's property manager, whenever the animal was present.  Camacho did so on October 18, 2019, requesting "a disability accommodation" for his wife "by registering her service animal" with Stout.  Dkt. No. 82, at PageID.943.  Stout responded by asking Camacho to provide a doctor's note establishing the need for a service animal and documentation regarding the animal's training.  Camacho balked at the request, noting that the House Rules did not include such requirements and observing that Stout's own friend had brought a pet onto the property in the past.  A few days later, on October 21, 2019, Camacho filed a "Housing Inquiry" with the U.S. Department of Housing and Urban Development (HUD) "to find out if Property Manager Stout's demands were unlawful."  *Id.*  A week later, HUD informed Camacho that the Hawaiʻi Civil Rights Commission (HCRC) "was investigating the AOAO on [his] behalf for discrimination."  *Id.*  at PageID.944.

By November 9, 2019, the requested service animal had not been approved despite Camacho's attempts to register it.  So when Camacho and his wife entered the Ke Nani Kai recreation area with her service animal, Stout "got in [his] wife's face and shouted at her while he and his friend physically blocked us from entering, saying she could not enter because she had a service animal."  *Id.*  Camacho then proceeded to

review the 2017 House Rules for Ke Nani Kai with Stout, and neither could identify any prohibition on bringing service animals into the recreation area, nor any basis for the requirements for approval which Stout had demanded.  Camacho also showed Stout an HCRC fact sheet about "assistance animals as reasonable accommodations in housing," which explained that condo associations could not require medical documentation from short-term guests seeking to use a service animal.  *Id.* at PageID.945.  Regardless, Stout stated that "he did not care" if Camacho's wife's dog "was a service animal or not because he had ways to make and enforce any rule he wanted."  *Id.*  The following day, Camacho informed Sears about the altercation with Stout and requested surveillance video of the incident.

Amidst the service animal dispute, Camacho also made two requests for disability accommodations for himself.  On October 27, 2019, he "requested a disability accommodation that any association concerns about [him], [his] property, [his] guests, etcetera be sent to [him] by email so as to avoid harassment and other confrontations in the future."  *Id.* at PageID.944.  And on November 9, 2019, he requested another unspecified disability accommodation from Sears based on his status as a disabled veteran and the medical advice he had received to "reside in a quiet secluded environment to best benefit [his] health."  *Id.* at PageID.945.  These requests were never acknowledged or approved.  *Id.* at PageID.951.

4

In 2020, another point of contention arose between Camacho and the AOAO.  On March 21, Sears, Stout, and various other individuals held an Executive Session of the AOAO Board at which they discussed various House Rules; Camacho was excluded from this meeting despite being a member of the House Rules Committee.  On April 2, updated House Rules were posted to the AOAO's online hub, reflecting an amendment barring "[p]ersons who rent a unit for less than five consecutive days" from having "any additional guests using the recreation areas except with the express permission of the Property Manager."  *Id.* at PageID.946.  According to Sears, the purpose of the new restriction—which the Second Amended Complaint calls the "anti-islander rule"—was to "stop the so-called largest complaint in the summer of local renters renting a unit for the weekend and bringing their friends to use the pool."  *Id.*  But Camacho and his neighbors sensed an illicit purpose:  in their view, "the Board was trying to keep out locals of Austronesian descent from the recreation area," as they had "tried to do . . . in the past."  *Id.* at PageID.946.  Several owners complained to Camacho about the "exclusionary" and "illegal" rule and asked him to "discuss their concerns with the AOAO Board of Directors."  *Id.*  Camacho duly relayed these concerns to the Board on April 22, 2020, and "asked if [they] could talk to an attorney or HCRC to find out if the anti-islander rule was unlawful," but was rebuffed by the Board.  *Id.* at PageID.947. That same day, he "filed a complaint against Defendants with HCRC."  *Id.*

Camacho reviewed the House Rules again on May 15, 2020, and found to his surprise that "they contained 5 additional rules that were never mentioned before," including rules "specifically targeting" him by prohibiting "things that [he] was requesting or had requested within the prior year." *Id.* at PageID.948. Among these alterations was an amendment to the rule regarding service animals, which now required applicants to complete an application form and obliged "[p]ersons without a readily apparent disability" to provide verification from a medical professional or social worker. Camacho voiced his objections to the amended service animal rule and the anti-islander rule with the AOAO Board on June 3, 2020, arguing that the rules represented "intentional and illegal discrimination and retaliation." *Id.* at PageID.949. On June 10, 2020, he filed a second discrimination complaint with HCRC. *Id.* at PageID.950. No further disputes arose over service animals, although on August 15, 2021, "a prospective vacation renter" asked Camacho if she could bring her service animal while staying at his unit; Camacho informed her that he had no objection but would need to check with the AOAO Board about the House Rules, and in response, the prospective renter withdrew her rental inquiry. *Id.*

Camacho's complaints remained pending until July 10, 2023, when HCRC "closed [his] complaint and sent a closure letter to California, instead of [his] email address" or his Moloka'i address. *Id.* at PageID.951. He began preparing to sell his Ke Nani Kai condo, but was informed by Defendant Associa Hawaii that he could not do

6

so unless he paid a "master association fee." *Id.*  Although Associa had informed him that the fee was due as early as November 5, 2019, *id.* at PageID.944, Camacho had concluded that Associa lacked authority to charge such a fee and apparently refused to pay for it.  The Second Amended Complaint does not state whether Camacho ultimately paid the fee, but one way or another Camacho sold his Ke Nani Kai condo on August 31, 2023.

Camacho filed this lawsuit on August 29, 2024, and named not only the AOAO and Associa, but also several individuals as Defendants.  Dkt. No. 1.  The AOAO and Associa initially defaulted, Dkt. No. 45, but that default entry was later set aside, Dkt. No. 63.  Camacho subsequently filed a First Amended Complaint, Dkt. No. 70, and the operative Second Amended Complaint, Dkt. No. 82.  On December 4, 2025, the court dismissed the individual Defendants based on Camacho's failure to serve them, Dkt. No. 104, leaving only the AOAO and Associa as Defendants.  On February 9, 2026, the remaining Defendants filed a Motion for Judgment on the Pleadings.  Dkt. No. 114.  Camacho opposed the motion, Dkt. No. 116, and Defendants replied, Dkt. No. 117.  The court finds the matter suitable for resolution without a hearing, as authorized by Local Rule 7.1(c), and now turns to the merits of Defendants' motion for judgment on the pleadings.

//

//

**DISCUSSION**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." A Rule 12(c) motion is analyzed under the "same standard as a Rule 12(b)(6) motion to dismiss." *Machado*, 454 F. Supp. 2d at 1061 (cleaned up); *see also Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). Under that standard, all allegations of material fact in the pleadings are taken as true and construed in the light most favorable to the plaintiff, and the court's task is to determine whether the complaint contains "sufficient factual matter, accepted as true, to state claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Setting aside 'labels and conclusions,' the complaint's factual allegations must be 'enough to raise a right to relief above the speculative level.'" *Waite v. Honolulu Liquor Comm'n*, Civil No. 23-00356, 2024 WL 4851600, at *2 (D. Haw. Nov. 21, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, it must include sufficient "factual enhancement" to cross over "the line between possibility and plausibility." *Twombly*, 550 U.S. at 556-57.

### A. The Second Amended Complaint Does Not Adequately Allege that Camacho's Civil Claims Are Timely

The Second Amended Complaint raises two broad categories of claims: violations of state and federal antidiscrimination laws and violations of state criminal law. The first category of claims is brought in five separate counts. Count I alleges that Defendants failed to provide Camacho and his wife with reasonable accommodations

for their disabilities in violation of the Americans with Disabilities Act (ADA), 42 U.S.C.

§ 12101 *et seq.*; the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; and the fair housing laws of

the State of Hawaiʻi, Haw. Rev. Stat. § 515-1 *et seq.*  Dkt. No. 82, at PageID.953-54.

Count II alleges that the AOAO Board created a "hostile housing environment" in

violation of the Fair Housing Act and its state counterpart.  *Id.* at PageID.955.  Count III

asserts a retaliation claim against Defendants based on Camacho's "opposition to and

complaints about disability and race/national origin discrimination," also in violation of

the Fair Housing Act and its state counterpart.  *Id.* at PageID.956-58.  Count IV alleges

that Defendants adopted a house rule that discriminated on the basis of race, color, and

national origin, in violation of the Fair Housing Act and its state counterpart.  *Id.* at

PageID.958-59.  Finally, Count V claims that Defendants also adopted a house rule that

discriminated based on disability, in violation of the Fair Housing Act and its state

counterpart.  *Id.* at PageID.959-60.

Defendants argue that these claims are barred by each law's statute of

limitations.  They observe that claims brought under the Fair Housing Act or the state's

housing antidiscrimination law must be brought not later than "two years after the

occurrence or the termination of an alleged discriminatory practice."  42 U.S.C.

§ 3613(a)(1)(A); Haw. Rev. Stat. § 515-9(b).  They acknowledge that each law contains

special provisions to augment the statute of limitations in the event that an aggrieved

person files a formal administrative complaint.  The federal Fair Housing Act provides

that "any time during which an administrative proceeding under this subchapter was pending" is to be excluded from the computation of the two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(B).  Separately, under Hawai'i law, when HCRC issues a "right to sue" notice following its review of a complaint, the complainant "has 90-days under state law within which to file a civil action in court."  *U.S. E.E.O.C. v. NCL Am., Inc.*, 504 F. Supp. 2d 1008, 1012 n.3 (D. Haw. 2007) (discussing Haw. Rev. Stat. § 368-12).  But Defendants contend that these statutory tolling provisions do not salvage Camacho's Fair Housing Act or state housing antidiscrimination law claims.

Defendants further argue that Camacho's ADA claims are similarly time-barred. Although they dispute that Ke Nani Kai is a "public accommodation" under the ADA— and thus dispute whether the ADA applies at all—they contend that any such claim would be subject to a two-year statute of limitations. [1]  Dkt. No. 114-1, at PageID.1262-63.

Defendants' motion lays out in detail the calculation of the statutory period for each substantive allegation in the Second Amended Complaint, taking into account instances in which time would be excluded for statute-of-limitations purposes because Camacho had a related administrative charge pending before HCRC, or where a claim

---

[1]    Without resolving the question of whether Ke Nani Kai is indeed a public accommodation, the court agrees that a claim properly brought under the provisions of the ADA governing public accommodations would be subject to a two-year statute of limitations.  *See Greer v. Haw. Permanente Med. Grp., Inc.*, Civ. No. 24-00299, 2025 WL 358448, at *8-9 (D. Haw. Jan. 31, 2025).

was covered by the right-to-sue notice and therefore subject to a 90-day limitations period from the receipt of that notice.  In support of these arguments, Defendants submit documents which they represent are Camacho's HCRC complaint and the right-to-sue letter closing it.  And based on these calculations, Defendants assert that every claim raised in Counts I-V of the Second Amended Complaint is time-barred.  In response, Camacho argues that tolling should apply to his claims because his administrative complaints remained pending for a long enough period of time to render his claims timely.

Although the court is not aware of any reason to doubt Defendants' calculation of the statute of limitations or the authenticity of the documents they have submitted, it need not go so far at this juncture in order to conclude that Camacho's claims are not timely.  On a motion for judgment on the pleadings, the court generally should "only consider the face of the complaint" and those documents either attached to the complaint or incorporated by reference therein.  *City of Fresno v. United States*, 709 F. Supp. 2d 888, 912 n.21 (E.D. Cal. 2010).  Accordingly, when a motion for judgment on the pleadings calls on the court to "decide whether an action is time-barred," the court "must determine whether the running of the statute [of limitations] is apparent on the face of the complaint"—in other words, without considering factual matters outside the pleadings.  *Bakalian v. Cent. Bank of Republic of Turkey*, 932 F.3d 1229, 1233 (9th Cir. 2019) (cleaned up).  But "if the assertions of the complaint, read with the required liberality,

11

would not permit the plaintiff to prove that the statute was tolled," the court may grant judgment on the pleadings. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011); *see Honchariw v. Cnty. of Stanislaus*, 530 F. Supp. 3d 939 (E.D. Cal. 2021), *aff'd* 2022 WL 522287 (9th Cir. Feb. 22, 2022).

That Counts I-V are time-barred is apparent on the face of the Second Amended Complaint. The latest occurrence of any factual allegation underpinning a claim presented in Counts I-V took place in June 2020.[2] This action was not filed until August 2024. Accordingly, because the two-year statute of limitations would have expired for both the state and federal housing discrimination claims by June 2022 at the latest, the claims are untimely unless the Second Amended Complaint offers any reason to believe that the statute should have essentially been suspended, or "tolled," during that period. It does not.

---

[2]     The Second Amended Complaint asserts that an ADA claim accrued as late as August 15, 2021, when a prospective vacation renter declined to rent with Camacho based on uncertainty over whether the AOAO Board would approve her service animal. But an "essential element" of a reasonable accommodation claim under the ADA is "that a plaintiff has requested and been denied a modification from the defendant before filing suit." *Crawford v. Uber Techs., Inc.*, 616 F. Supp. 3d 1001, 1007 (N.D. Cal. 2022). And since the prospective renter withdrew her inquiry before Camacho could make a request on her behalf, Camacho cannot demonstrate that Defendants denied her a reasonable accommodation in August 2021. In any event, even if the court were to accept that the ADA claim accrued on August 15, 2021, the two-year statute of limitations applied to claims brought under Title III of the ADA would have required Camacho to bring that claim by no later than August 15, 2023, so the analysis of that claim would not meaningfully differ from the analysis of the housing claims.

12

There are two primary types of tolling:  statutory tolling, in which the statute itself provides a provision to pause the clock, and equitable tolling, which generally turns on fairness considerations rather than statutory language.  *See generally Jones v. Blanas*, 393 F.3d 918, 927-28 (9th Cir. 2004).  The Second Amended Complaint does not offer any basis for either.  As noted, the Fair Housing Act includes statutory tolling provisions:  during the pendency of an administrative proceeding brought pursuant to that law, the statute of limitations stops.  *See* 42 U.S.C. § 3613(a)(1)(B).  It follows that if a formal housing discrimination complaint was lodged during the two-year limitations period, statutory tolling might apply.  And there are at least a few allegations in the Second Amended Complaint—namely, Camacho's statements that he filed a "Housing Inquiry" with HUD on October 21, 2019 (which, according to HUD, was being investigated by HCRC by October 28, 2019), and two housing discrimination charges with HCRC on April 22, 2020, and June 10, 2020, respectively—which might theoretically be relevant to a statutory tolling analysis.

But a pending HUD complaint only "tolls the limitation period on a claim if the HUD complaint is based on the same discriminatory conduct as the claim."  *West v. Palo Alto Hous. Corp.*, No. 17-CV-00238, 2019 WL 2549218, at *17 (N.D. Cal. June 20, 2019).  And here, the Second Amended Complaint contains no information to indicate whether the complaints were filed with HUD under the Fair Housing Act (as opposed to Hawai'i state law alone), what factual claims were included in the various charges,

13

which complaints were resolved by HCRC's closure letter of July 10, 2023, and what

disposition any complaints not addressed by the closure letter received.  In other words,

the Second Amended Complaint makes no factual allegations that would, taken as true,

establish that these complaints have anything to do with any claim in Counts I-V at all.

And without this information, there is no basis for Camacho to assert that these charges

would toll the statute of limitations on his Fair Housing Act claims.

Camacho might be able to make factual allegations, in an amended complaint, to

support an argument for tolling, but the Second Amended Complaint is not sufficient in

its current form to "raise a right to relief above the speculative level" and to therefore

cross "the line between possibility and plausibility."  *Twombly*, 550 U.S. at 555.

Camacho bears "burden of alleging facts which would give rise to tolling."  *Hinton v.

Pac. Ents.*, 5 F.3d 391, 395 (9th Cir. 1993).  And while the court must construe his

complaint with "the required liberality" and "accept as true all well-pleaded allegations

of material fact," it need not accept as true "allegations that are merely conclusory,

unwarranted deductions of fact, or unreasonable inferences."  *McGinn v. Haw.

Symphony Orchestra*, 727 F. Supp. 3d 915, 934 (D. Haw. 2024) (cleaned up).  In its current

form, the Second Amended Complaint simply does not contain sufficient factual matter

to support the conclusion that statutory tolling would apply; indeed, the only way in

which the court could conclude that tolling might apply would be to draw unwarranted

factual deductions or unreasonable inferences from the allegations that do appear.  And

although it is not clear that equitable tolling is available under the Fair Housing Act, *see Garcia v. Brockway*, 526 F.3d 456, 465 & n.8 (9th Cir. 2008), the Second Amended Complaint likewise lacks factual allegations which might establish grounds for equitable tolling, so the same reasoning applies.

A similar analysis applies to the claims brought under the state housing discrimination law and the ADA.  To the extent that equitable tolling might be available under either legal regime, Hawaiʻi equitable tolling principles would apply.  *See Greer*, 2025 WL 358448, at *9 (citing *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001)).  Under Hawaiʻi law, equitable tolling applies when a plaintiff demonstrates "(1) that he . . . has been pursuing his right diligently, and (2) that some extraordinary circumstance"—that is, a circumstance that is "beyond the control of the complainant" and which "make[s] it impossible" to file within the statute of limitations—"stood in his way."  *Off. of Hawaiian Affs. v. State*, 110 Haw. 338, 360, 133 P.3d 767, 789 (2006).  And while Camacho argues that he is entitled to equitable tolling based on his diligent pursuit of his claims and snafus with the delivery of the HCRC right-to-sue letter, the underlying issue remains the same:  the Second Amended Complaint offers no way to tell whether these facts are related to any of the claims in Counts I-V.  In its current form, then, the Second Amended Complaint contains no facts to provide a basis for tolling.

To be sure, both parties support their arguments for or against tolling with ample factual supplementation, but these arguments go well beyond the face of the Second Amended Complaint. And because the court is limited to the pleadings on a motion for judgment on the pleadings, the court will not consider those factual arguments here. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) ("[F]ederal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings . . . ."). As discussed above, the facts alleged in the Second Amended Complaint, even when liberally construed, do not establish any basis for statutory or equitable tolling. Accordingly, because it is clear from the face of the Second Amended Complaint that the claims under the Fair Housing Act, Hawaiʻi housing discrimination law, and the ADA in Counts I-V are time-barred, and because no basis for tolling is present in the complaint, those claims must be DISMISSED. *Cf. Wideman v. Ige*, Civ. No. 20-00162, 2020 WL 2530347, at *5-6 (D. Haw. May 18, 2020).

Although the court dismisses the state and federal housing discrimination and ADA claims in Counts I-V, it recognizes that Camacho is proceeding pro se and could conceivably fix the problems with his complaint through amendment. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (explaining that a district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of

other facts").  The dismissal of those claims is therefore without prejudice, and the court will GRANT Camacho further leave to amend to add facts which might support the application of statutory or equitable tolling.

If Camacho elects to file a further amended complaint—which should be titled "Third Amended Complaint"—he must do so by June 5, 2026, and it must cure the deficiencies identified above.  He should include enough detail about the various charges he filed with HUD and HCRC for the court and Defendants to fairly evaluate which claims in the complaint, if any, were statutorily tolled during the pendency of any investigation into those charges.  Specifically, he should describe the factual allegations that formed the basis of each charge, whether each charge was submitted to HUD, HCRC, or both, and whether each charge was resolved by the relevant administrative body (and if so, how it was resolved).  Similarly, he should allege any specific facts that he believes would support the application of equitable tolling to any of his claims.

Camacho is cautioned that the grant of leave to amend is not a license for him to add new legal claims or factual allegations unrelated to the content currently present in the complaint.  In other words, Camacho may add additional detail and granularity to the factual allegations currently in the complaint, but he may not use amendment to present transactions or occurrences which have not been previously pleaded or to assert

new violations beyond those already in the complaint.  Nor may Camacho add any new

Defendants.

###### B.    The Second Amended Complaint's Criminal Claims Are Meritless

In Counts II, III, VI, and VII, Camacho alleges violations of the Hawaiʻi Penal

Code.  Counts II and III accuse Stout of "physically block[ing]" Camacho and his wife

from entering the recreation area with her service animal, getting "right in her face,"

and "shout[ing] at her," in violation of HRS § 711-1106, which criminalizes harassment.

Dkt. No. 82, at PageID.954-58.  Count VI charges that the AOAO Board covertly

changed the House Rules "without any notice to owners, let alone opportunity to

comment," in violation of HRS § 708-835.65, which criminalizes fraud, and HRS § 708-

872, which criminalizes the falsification of business records.  *Id.* at PageID.960-61.  And

Count VII asserts that the AOAO Board covered up its unlawful House Rules change by

"delet[ing] the archived House Rules to destroy evidence that they falsified the 2020

House Rules," again in violation of the state criminal fraud statute, HRS § 708-835.65, as

well as HRS § 710-1076, which criminalizes tampering with or fabricating physical

evidence.  Dkt. No. 82, at PageID.961-62.

"As a private individual," Camacho lacks the "authority to bring criminal

charges under Hawaii's criminal statutes."  *Jaentsch v. Puha*, No. 18-cv-00073, 2018 WL

1463348, at *4 (D. Haw. Mar. 23, 2018); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619

(1973).  "[W]hether to prosecute criminal statutes and bring charges are decisions left to

18

the discretion of a prosecutor." *Tuomela v. Waldorf-Astoria Grand Wailea Hotel*, Civ. No. 20-00117, 2020 WL 3490027, at \*2 (D. Haw. June 26, 2020). And while private citizens may in rare and highly specific instances be able to file a civil lawsuit to enforce a criminal law, Hawaiʻi does not recognize such a private right of action unless the criminal statute "expressly authorize[s] a private party to sue." *Kealoha v. Machado*, 131 Haw. 62, 81, 315 P.3d 213, 232 (2013); *see also Tuomela*, 2020 WL 3490027 at \*2. None of the criminal statutes cited in the complaint contain any indication, express or otherwise, of an intent to authorize a private party to sue. *Accord, e.g., Wideman v. Hickam Fed. Credit Union*, 157 Haw. 427, 579 P.3d 124 (Haw. Ct. App. 2025) (unpublished table decision) (holding that a claim brought under the state criminal harassment statute was properly dismissed because "[a] criminal statute that doesn't expressly authorize a private party to sue does not create a private right of action" and "HRS § 711-1106 does not expressly authorize a private party to sue").

Camacho's only response to Defendants' argument that he cannot assert claims under the state penal code is his statement that "I don't have to be a prosecutor to request additional damages for the criminal conduct because their crimes were the Adverse Actions." Dkt. No. 116, at PageID.1365 n.35. But to the extent Camacho seeks to rely on the state penal code to obtain damages, it suffices to say that "a civil action for damages is not the proper mechanism to allege criminal conduct." *Hunt v. Fla. Corr. Facility*, Civil No. 18-00003, 2018 WL 1513647, at \*3 (D. Haw. Mar. 27, 2018). In any

19

event, the Second Amended Complaint does more than just "request additional damages" for the alleged criminal conduct—it includes separate counts and allegations asserting that Defendants' conduct violated Hawai'i criminal law.  As explained, private citizens like Camacho lack the authority to bring such claims in civil lawsuits.

Camacho therefore cannot proceed with any of the claims brought under the state's criminal statutes.  And because he cannot pursue criminal charges in a civil complaint, it would be futile to grant him leave to amend those counts.  *Stephens v. Lee*, CV No. 09-00484, 2010 WL 5388193, at *8-9 (D. Haw. Dec. 17, 2010); *cf. Valero v. Bac Home Loans Servicing, LP*, 667 F. App'x 255, 256 (9th Cir. 2016).  Accordingly, Counts VI and VII are DISMISSED with prejudice and without leave to amend.  And to the extent Counts II and III allege violations of the State's criminal harassment statute, they are also DISMISSED with prejudice and without leave to amend.

This dismissal does not, of course, prevent Camacho from relying on any of the factual allegations underpinning these now-dismissed criminal charges to support his separate civil claims.  To the extent Camacho concludes that any of these facts support his civil claims, he may reallege them in a Third Amended Complaint.  But Camacho can only seek to support his civil claims; he has no authority to enforce the state's penal code.

//

//

**CONCLUSION**

For the foregoing reasons, the court:

(1)  GRANTS Defendants' motion with respect to all claims in the complaint brought under the Hawaiʻi Penal Code, and DISMISSES those claims with prejudice;

(2)  GRANTS Defendants' motion with respect to the civil claims in Counts I-V, and DISMISSES those claims without prejudice; and

(3)  GRANTS Plaintiff Michael Camacho partial leave to amend his complaint; namely, it grants leave to amend the civil claims in Counts I-V.

If Camacho elects to file an amended complaint, he must do so by June 5, 2026. Any such amended complaint should be titled "Third Amended Complaint", and it must fix the problems identified in this order.

IT IS SO ORDERED.

DATED:  May 1, 2026, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 24-00372 MWJS-RT, *Michael Camacho v. Association of Apartment Owners of Ke Nani Kai*, et al.; ORDER GRANTING DEFENDANTS ASSOCIATION OF APARTMENT OWNERS OF KE NANI KAI AND CERTIFIED MANAGEMENT INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS